## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PURO-TEC, LTD,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 18-4546** |
| | : | |
| **JAMES CAROTENUTO, *et al.*,** | : | |
| *Defendants.* | : | |

## MEMORANDUM

### I.     INTRODUCTION

Currently before the Court is Defendants, ARMM Architecture Associates,

Inc., ARMM Consultants, Inc., and Frank James Moore's, Motion to Dismiss (ECF

No. 19-1), and Plaintiff's Response thereto (ECF No. 21).[1]  This Court has

jurisdiction over this matter because a federal question is presented. *See* 28 U.S.C.

§ 1331.  Specifically, this matter concerns allegations under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

Plaintiff also pleads two state law claims.

---

[1] On December 21, 2018, this Court denied Defendant, James Carotenuto's, Motion to Dismiss. ECF No. 10.  At oral argument on the Motion to Dismiss that is currently before the Court,  Defendant Carotenuto moved the Court to reconsider its previous denial of his Motion to Dismiss, based on the arguments presented by the other Defendants. ECF No. 27, N.T. April 1, 2019, at 44-45, ln 16-25. Defendant Carotenuto, essentially, joined Defendants' Motion to Dismiss. *Id.*  This Court grants Defendant Carotenuto's oral Motion for Reconsideration, Defendant Carotenuto is deemed to be a part of Defendants' Motion to Dismiss, and the disposition of this Motion to Dismiss will apply to all Defendants.

## II. NAMED PARTIES

Plaintiff, Puro-Tec, LTD, is in the business of remediation and restoration of properties damaged by fire, flood, and weather events. ECF No. 1 at ¶ 11. Defendant, Frank Moore ("Moore"), is a Pennsylvania license architect and the principal and sole shareholder of Defendants, ARMM Architecture Associates, Inc. ("ARMM Architecture Associates") and ARMM Consultants Inc. ("ARMM Consultants") (collectively, "ARMM"). *Id.* at ¶¶ 17, 31, 35. ARMM designs, repairs, and manages construction for commercial and industrial roofs. *Id.* at ¶ 19. Defendant, James Carotenuto ("Carotenuto"), worked as an employee of ARMM in Pennsylvania and was also a principal and director of Defendant, City Restoration LLC ("City Restoration"). *Id.* at ¶¶ 15, 54. Carotenuto created City Restoration with Plaintiff's employee, Jerome McFaul ("McFaul"). *Id.* at ¶ 56. Nonparty McFaul opened and operated City Restoration with Carotenuto while he was still employed by Plaintiff and ceased working for Plaintiff roughly five months after opening City Restoration. *Id.* at ¶¶ 56, 57. City Restoration was in direct competition with Plaintiff. *Id.* at ¶ 54. City Restoration also shared a New Jersey office with ARMM. *Id.* at ¶ 37.

## III. FACTUAL BACKGROUND

Nonparty, Lorraine Newsome ("Newsome"), is the owner of three parcels of real property located in Philadelphia: (1) 1735 North Taney Street; (2) 1737 North

2

Taney Street; and (3) 1739 North Taney Street (collectively, the "Taney Street Properties"). *Id.* at ¶ 41. On January 8, 2013, an electrical fire at 1737 North Taney Street caused significant damage to the Taney Street Properties. *Id.* at ¶ 43. Nonparty, Richard Mays ("Mays"), is Newsome's Durable Power of Attorney and acted on Newsome's behalf in handling the post-fire insurance claims and restoration of the Taney Street Properties. *Id.* at ¶ 44. Plaintiff alleges that Mays was a cohort of the Defendants and their alleged RICO enterprise. ECF No. 24 at 11-12. In August 2013, Plaintiff began remediation and repair work to the damages at 1735 North Taney Street. ECF No. 1 at ¶ 51. McFaul, while working for Plaintiff, was involved in this project, as he signed the contract on Plaintiff's behalf and estimated the damages to 1735 North Taney that was used by Newsome and Mays to settle Newsome's claims with her insurer. *Id.* at ¶¶ 50, 52. The repairs to be performed by Plaintiff, among other things, included the complete replacement of the roof at 1735 Taney Street. *Id.* at ¶ 52.

Sometime in January 2014, McFaul and Carotenuto created City Restoration, which immediately became a direct competitor to Plaintiff. *Id.* at ¶¶ 53, 55. McFaul was still employed by Plaintiff when he created City Restoration. *Id.* at ¶ 54. In February 2014, McFaul, still acting on Plaintiff's behalf, entered into a written contract to perform repairs to 1737 and 1739 North Taney Street. *Id.* at ¶ 49. On May 16, 2014, McFaul ceased his employment with Plaintiff and

3

began to openly operate City Restoration. *Id.* at ¶ 57. Plaintiff contends that at this time, McFaul expressed his intention, plan, and desire to harm Plaintiff's business, as well as pursue Plaintiff's sources of business and redirect them to City Restoration. *Id.* at ¶ 58. Plaintiff alleges that Carotenuto aided in this conduct. *Id.*

By Fall 2014, Plaintiff had completed all its repairs at 1737 and 1739 North Taney Street and had substantially completed all the repairs at 1735 North Taney Street. *Id.* at ¶ 60. However, following a rainstorm on October 15, 2014, a large tree limb fell on the roof of 1735 North Taney Street, causing significant damage to the new roof, allowing rainwater to enter the interior of the home, and causing damage to the interior. *Id.* at ¶¶ 61, 62. Due to the damage to the roof, Plaintiff performed a temporary roof repair at 1735 North Taney Street. *Id.* at ¶ 63. The temporary roof repair consisted of applying tarps to the damaged areas of the roof. *Id.* On October 17, 2014, Philadelphia Department of Licenses and Inspections began demolishing 1733 North Taney Street, and in doing so, removed the attached temporary roof on 1735 North Taney Street. *Id.* at ¶ 64.

Sometime shortly after the Department of Licenses and Inspections removed and replaced the temporary roof at 1735 North Taney Street, an agent of Plaintiff's observed McFaul and an individual believed to be Carotenuto at the 1735 North Taney Street jobsite. *Id.* at ¶ 66. After these two individuals were observed at the job site, Newsome and Mays ordered Plaintiff to cease doing work at 1735 North

4

Taney Street. *Id.* at ¶¶ 67, 69. At this time, Plaintiff was owed in excess of
$40,000.00 for repairs it had completed at 1735 North Taney Street. *Id.* at ¶ 67.
Mays then began referring to defects in Plaintiff's work and workmanship, and
pointed out damages to 1735 North Taney Street relating to the tree limb damage.
*Id.* at ¶ 70. On October 23, 2014 and October 24, 2014, Mays sent a series of
emails to Plaintiff justifying the non-payment of sums due to Plaintiff. *Id.* at ¶ 71.
Plaintiff alleges that these emails were co-authored by McFaul and Carotenuto. *Id.*
On November 6, 2014, Mays informed Plaintiff via a telephone conversation that
he intended to withhold payment and would only consider making payments after
an independent evaluation of Plaintiff's work. *Id.* at ¶ 72.

On November 17, 2014, Moore authored and sent a report to Newsome in
Philadelphia, addressing Plaintiff's roofing work and subsequent temporary roof at
1735 North Taney Street (the "Moore Report"). *Id.* at ¶ 79. When the Moore
Report was sent to Newsome, Plaintiff was unaware of its existence. *Id.* at ¶ 86.
Plaintiff alleges that the Moore Report was actually written by Carotenuto. *Id.* at ¶
80. Plaintiff contends that the Moore Report is false and misleading in regard to
Plaintiff's work at 1735 North Taney Street. *Id.* at ¶¶ 82-85. After receiving the
Moore Report, Newsome, through Mays, entered into an agreement with City
Restoration to complete the repairs at 1735 North Taney Street. *Id.* at ¶ 87.
Although the timing of Newsome's receipt of the Moore Report and the hiring of

5

City Restoration may lead one to believe that Newsome relied on the Moore Report, Plaintiff has made it clear that it is not alleging, and does not believe, that Newsome ever relied on the Moore Report. ECF No. 27, N.T. April 1, 2019, at 9-10, ln. 2-11.

On October 28, 2016, Newsome's attorney, Samantha Green ("Green"), sent Plaintiff letters alleging that the work performed by Plaintiff at 1735 North Taney Street was defective and would require demolition and replacement. ECF No. 1 at ¶ 90. In these letters, it is alleged that Plaintiff violated Pennsylvania's Home Improvement Consumer Protection Act and committed home improvement fraud in relation to its repair work at 1735 North Taney Street. *Id.* at ¶ 92. At this time, Plaintiff first received the Moore Report. *Id.* at ¶ 93. Following receipt of the Moore Report, Plaintiff informed Green of the relationship between McFaul, Carotenuto, City Restoration, Moore, and ARMM. *Id.* at ¶ 94. Plaintiff also stated to Green its opinion that the Moore Report was fraudulent and misleading. *Id.* Upon learning this information, Green called Moore to inquire about his report. *Id.* at ¶ 95. Moore affirmed the legitimacy and accuracy of his report to Green. *Id.*

On April 21, 2017, Plaintiff initiated an action in the Court of Common Pleas of Bucks County against Newsome for monies allegedly owed related to unpaid invoices for work performed at 1735 North Taney Street (the "Bucks County Litigation). *Id.* at ¶ 97. On April 27, 2017, Plaintiff reached out to Moore

6

to discuss his report and Moore refused to withdraw the report. *Id.* at ¶ 98. On June 9, 2017, Newsome filed a counterclaim against Plaintiff in the Bucks County Litigation.[2] *Id.* at ¶ 100. Newsome's counterclaim sought damages in the sum of $439,000.00, which could be trebled. *Id.* The Moore Report was attached to the counterclaim. ECF No. 24 at 7. In May 2018, Moore, again, refused to withdraw his report. ECF No. 1 at ¶ 101. The parties in the Bucks County Litigation resolved the matter out of court after Newsome withdrew her claims against Plaintiff and Roof-Max, in exchange for a release of Plaintiff's collection claim against her. *Id.* at ¶ 104.

On October 23, 2018, Plaintiff filed its Complaint in the instant matter. On March 19, 2019, the Court ordered Plaintiff to file a RICO Case Statement. ECF No. 23. On March 29, 2019, Plaintiff filed its RICO Case Statement, which is construed as an amendment to the pleadings. *See id.*

## IV. ALLEGED RACKETEERING ENTERPRISE

### A. Entities in the Association-in-fact Enterprise

Plaintiff alleges that an association-in-fact enterprise was formed between Defendants, Carotenuto, City Restoration, Moore, ARMM Architecture, ARMM Consultants, and nonparty, McFaul. ECF No. 1 at ¶ 105. Plaintiff does not specifically allege that Mays was a part of the allege enterprise, but it does allege

---

[2] Newsome, in her counterclaim, also joined Roof-Max as an additional third-party defendant.

that Mays was a co-conspirator and participant in various alleged predicate acts against Plaintiff. ECF No. 24 at 11-12. The association-in-fact enterprise allegedly operated through legitimate businesses to further its end of harming Plaintiff's business. ECF No. 1 at ¶ 106. Carotenuto and McFaul advantaged their business, City Restoration, by employing the expert reputation of Moore and ARMM to harm Plaintiff's business. *Id.* Moore and ARMM, according to Plaintiff, participated in this association-in-fact enterprise to seek the favor of Mays for collateral business relationships. *Id.* at ¶ 107.

## B. Predicate Acts[3]

Plaintiff alleges the Defendants' association-in-fact enterprise committed seven predicate acts that were directed at Plaintiff. They include four acts of wire fraud, 18 U.S.C. § 1343, mail fraud, 18 U.S.C. § 1341, theft by extortion, 18 Pa. C.S. § 3923(a)(6), and conspiracy to commit theft by extortion, 18 Pa. C.S. § 3923(a)(6). *Id.* at ¶¶ 109-160. Plaintiff alleges the Defendants' association-in-fact enterprise committed two predicate acts that were directed at third parties. They include two acts of transportation of stolen goods, money, 18 U.S.C. § 2314. *Id.* at ¶¶ 161-168.

---

[3] Plaintiff, in its RICO Case Statement, withdrew six predicate acts that were alleged in his Complaint. ECF No. 24 at 1-2.

## V. DISCUSSION

### A. 12(b)(6) Standard of Review

When reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*,

556 U.S. at 679). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

## B. RICO[4]

The Court will first address the applicable RICO statutory provisions. 18 U.S.C. § 1964(c) contains the statutory language regarding a private right of action under RICO and states, in pertinent part, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

---

[4] Although not pertinent on its discussion as to whether Plaintiff's RICO claims can survive this stage of the litigation, the Court notes that the predicate acts alleged by Plaintiff to support its RICO claims in this matter are the precise type of acts that have nothing to do with the original intent of the RICO statute. *See DelRio-Mocci v. Connolly Properties, Inc.*, 672 F.3d 241 (3d Cir. 2012) (McKee, CJ., concurring). In *DelRio-Mocci*, Chief Judge McKee, joined by Judges Fuentes and Greenberg, addressed the inherent problems with the civil RICO statute and stated, "the very strength of RICO – its breadth – now diffuses its focus. RICO's treble damage provision has been seized upon to convert the statute into a hodgepodge of prohibitions that now function as a tripwire that offers the lure of treble recovery to all who can squeeze their claim into some combination of RICO's 'predicate acts.'" *Id.* at 254. Chief Judge McKee reminds courts that RICO was originally enacted to fight crime, specifically, organized crime. *Id.* at 251-53. Although, due to the RICO statute's breadth, "most of the civil suits filed under the statute have nothing to do with organized crime; they are garden-variety civil fraud cases of the type traditionally litigated in state courts." *Id.* at 254 (brackets and quotations omitted) (citing William H. Rehnquist, Chief Justice of the United States, Remarks of the Chief Justice, Address Before the Eleventh Seminar on the Administration of Justice (Apr. 7, 1989), 21 ST. MARY'S L.J. 5, 9 (1989)). However, with that being said, "this defect – if defect it is – is inherent in the statute as written, and its correction must lie with Congress." *Id.* at 258 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 499-500 (1985)).

The "by reason of" language in section 1964(c) has been interpreted by the Supreme Court to indicate that the RICO violations by the defendants must have been the proximate cause of the plaintiff's injury. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (explaining that to state a claim under civil RICO, a plaintiff is required to show that the predicate acts proximately caused the plaintiff's injuries); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); *DelRio-Mocci*, 672 F.3d at 256 ("[T]he [Supreme] Court nevertheless requires an injury sufficiently related to the alleged racketeering activity to justify allowing a treble damage claim to proceed under RICO." (McKee, CJ., concurring)). Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1961 defines the predicate acts that are actionable under RICO because they constitute "racketeering activity." Section 1961(1)(A) defines "racketeering activity" to include any act or threat involving extortion and section 1962(1)(B) defines "racketeering activity" to include acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and transportation of stolen property (18 U.S.C. § 2314). The "pattern of racketeering activity" language in section 1962(c) creates a requirement for the plaintiff to show "at least two acts of

11

racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). These predicate acts must also be "related, *and* that they pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). Therefore, in order to properly bring a RICO claim, a plaintiff must show that the defendants, through an enterprise, committed two statutorily prohibited predicate acts within a ten year period that are related, pose a threat of continued criminal activity, and proximately caused the plaintiff's injury.

In *Bridge v. Phoenix Bond & Indem. Co.*,[5] the Supreme Court further addressed the necessary proximate cause under section 1964(c) in a civil RICO matter by deciding whether "a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations." 553 U.S. 639, 641-42 (2008). In deciding this issue, the Supreme Court held that "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Id.* at 649. However, when a RICO plaintiff alleges an "injury 'by reason of' a pattern of mail fraud," he cannot "prevail without showing that *someone* relied on the defendant's misrepresentations." *Id.* at 658 (emphasis in original). This third-party reliance is

---

[5] Plaintiff, at oral argument, relied on *Bridge* in support of its assertion that proximate cause for the predicate acts concerning fraud was satisfied. ECF No. 27 at 10-11.

necessary because "a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." *Id.* at 659. This same reasoning applies to predicate acts for wire fraud. *See generally In re Avandia Marketing, Sales Practices & Product Liability Litigation*, 804 F.3d 633 (3d Cir. 2015) (applying the causation analysis from *Bridge* to alleged RICO violations based on predicate acts that included mail and wire fraud).

In the instant matter, Plaintiff alleges one predicate act of mail fraud, 18 U.S.C. § 1341, four predicate acts of wire fraud, 18 U.S.C. § 1343, one predicate act of theft by extortion, 18 Pa. C.S. § 3923(a)(6), one predicate act of conspiracy to commit theft by extortion, 18 Pa. C.S. § 3923(a)(6), and two predicate acts of transportation of stolen good, money, 18 U.S.C. § 2314. ECF No. 24 at 16-18. In order to prove mail and wire fraud, a plaintiff must show "(1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). Further, *Bridge* instructs this Court that someone must have relied on the fraud. *Bridge*, 553 U.S. at 658-59. Predicate act I, as alleged by Plaintiff, concerns an allegedly fraudulent email that was sent on October 23, 2014 at 6:39 p.m. by Mays to Patrick Ferris ("Ferris"), Plaintiff's president. ECF No. 1 at ¶ 111; ECF No. 24 at 16. Predicate act II alleges that a second fraudulent email

13

was sent on October 24, 2014 at 11:56 a.m. by Mays to Ferris. ECF No. 1 at ¶ 114; ECF No. 24 at 16. Predicate act IV alleges that the sending of the Moore Report was mail fraud by the Defendants because Plaintiff alleges that the report was fraudulent and was mailed from Moore's office in New Jersey to Newsome's home in Philadelphia. ECF No. 1 at ¶12; ECF No. 24 at 16. Predicate act X alleges that Defendants committed wire fraud when Moore informed Green that he refused to withdraw his allegedly fraudulent report. ECF No. 1 at ¶ 140. Plaintiff alleges that Green, over the telephone, relied on Moore's false representation that the Moore Report was accurate in pursing Newsome's counterclaims against Plaintiff in the Bucks County Litigation. *Id.* at ¶ 143; ECF No. 24 at 17. Predicate act XI, the final act constituting mail or wire fraud, alleges that Defendants committed wire fraud when Newsome and Mays electronically filed their Answer, Amended Answer, Second Amended Answer, New Matter, and Counterclaims with Complaint on June 9, 2017, June 23, 2017, and August 11, 2017, attaching the allegedly fraudulent Moore Report to these filings, in the Bucks County Litigation. ECF No. 1 at ¶¶ 145-148; ECF No. 24 at 17.

In the instant matter, following the discussion in *Bridge*, a liberal reading of Plaintiff's Complaint and RICO Case Statement demonstrates that of the five alleged predicate acts concerning mail and wire fraud, only one (predicate act X) alleges that anyone relied on the alleged fraudulent acts. The alleged fraud was

14

Moore allegedly refusing to withdraw his allegedly fraudulent report so that Green would rely on the Moore Report in bringing Newsome's counterclaim in the Bucks County Litigation.[6] Further, at oral argument, Plaintiff conceded that Green was the only person that was defrauded by the alleged RICO enterprise. *See* ECF No. 27 at 9, ln. 8-11 ("[Plaintiff's attorney]: [W]hat the Plaintiff is alleging is that somebody did rely upon [the Moore Report]. I think it was [Green] in determining probable cause to bring the [Bucks County Litigation] in the first place."). Plaintiff's counsel further admitted at oral argument that the first individual (Green) allegedly deceived by the Moore Report was after the work at the Taney Street Properties was completed. *Id.* at 11, ln. 11-14. As to predicate acts I, II, IV, and XI, Plaintiff has not pled that anyone relied on these alleged fraudulent acts that would create the requisite proximate causation for Plaintiff's injuries. Although predicate act IV concerns the Moore Report, Plaintiff admitted that no one relied on the report until Green, on Newsome's behalf, brought the counterclaim in the Bucks County Litigation. *See id.* at 9, ln. 2-11. No one relied on the Moore Report during the time period in which the repairs to the Taney Street Properties were taking place. Assuming, without deciding, that predicate act

---

[6] For purposes of this Motion, the Court only assumes that Green relied on a fraudulent Moore Report in determining that a cause of action existed against Plaintiff in the Bucks County Litigation. The Court is not determining whether refusing to withdraw a fraudulent report so that someone else's attorney would rely on the fraudulent report in bringing a counterclaim can amount to wire fraud.

15

X constitutes wire fraud, Plaintiff must also have pled a second predicate act that is related to predicate act X and proximately caused Plaintiff's injuries.

Plaintiff alleges Defendants' committed predicate acts XII and XIII. These predicate acts allege that Defendants committed theft by extortion and conspiracy to commit theft by extortion, 18 Pa. C.S. § 3923(a)(6), when they allegedly withheld property of the Plaintiff's in the form of funds due to the Plaintiff and threatened to obtain the Plaintiff's property by means of a lawsuit when Moore refused to withdraw his report. ECF No. 24 at 17. Under Pennsylvania law, "[a] person is guilty of theft if he intentionally obtains or withholds property of another by threatening to: . . . (6) testify or provide information or withhold testimony or information with respect to the legal claim or defense of another." 18 Pa. C.S. § 3923(a)(6). "The gravamen of an extortion offense . . . is an express or implied threat that some harm will befall the victim should he fail to comply with the extortionist's demands." *United States v. Pungitore*, 910 F.2d 1084, 1131 (3d Cir. 1990) (quoting *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991, 997 (1983)).

In the instant matter, Plaintiff has not sufficiently pled that Defendants committed theft by extortion or conspiracy to commit theft by extortion. Plaintiff's extortion claims rely on Moore refusing to withdraw his report. Plaintiff is asking this Court to infer that Moore's refusal to withdraw his report can be construed as

16

extortion because "[w]ith the benefit of the [Moore Report] and its implicit guarantee of testimony . . . Mays was able to withhold the property of the Plaintiff in the form of funds due to it, and threaten to obtain Plaintiff's property by means of a lawsuit." ECF No. 24 at 17. First, Plaintiff's extortion claims against Defendants are too attenuated. It was *Newsome/Mays* who were allegedly withholding Plaintiff's money and attempting to obtain money from Plaintiff in the Bucks County Litigation, not the Defendants. None of the Defendants have obtained or withheld any of the Plaintiff's property or were even parties to the Bucks County Litigation. Second, there is no allegation by Plaintiff that any of the Defendants threatened Plaintiff with potential testimony in the Bucks County Litigation. Contrary to Plaintiff's assertion, the Court will not infer that Moore "threatened" testimony simply because he advertises himself as an "in-demand expert" and refused to withdraw his report. It was Newsome/Mays, not Moore, who submitted the Moore Report in that action and used it in support of their counterclaim. Therefore, Plaintiff's alleged predicate acts of theft by extortion and conspiracy to commit theft by extortion cannot be considered "racketeering activities" to support a RICO claim.

The final two predicate acts alleged by Plaintiff are transportation of stolen goods, money, 18 U.S.C. § 2314. ECF No. 1 at ¶¶ 161-168; ECF No. 24 at 17-18. As they are alleged by Plaintiff, these predicate acts do not constitute "racketeering

17

activities" because Plaintiff has also failed to demonstrate how these predicate acts proximately caused his injuries. Plaintiff never alleges that he was injured "by reason of" these alleged acts by Defendants. Further, these two predicate acts were directed only at third-parties and appear to be wholly unrelated in any way to Plaintiff or its alleged injuries. Simply, these are too remote from any potential harm that Plaintiff may have suffered. Therefore, because at least two predicate acts are required under the RICO statute, Plaintiff has not alleged plausible RICO claims.

Plaintiff's RICO claims also cannot survive Defendants' Motion to Dismiss because Plaintiff's alleged predicate acts under RICO only allegedly inflicted a single injury to Plaintiff. This Court has already assumed that, under the RICO statute, Plaintiff has alleged only one plausible predicate act. That predicate act only concerns a single injury to Plaintiff. That single injury being money Plaintiff spent as a result of the Bucks County Litigation. Bringing a RICO action under these circumstances is not the intention Congress had for civil RICO claims. *See Marshall-Silver Const. Co., Inc. v. Mendel*, 894 F.2d 593, 597 (3d Cir. 1990). In *Mendel*, the Third Circuit Court of Appeals instructs the Court that:

> Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are "related" by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and

18

augmented criminal sanctions dependant solely on whether the
fraudulent scheme is well enough conceived to enjoy prompt success
or requires pursuit for an extended period of time. Given its "natural
and common sense approach to RICO's pattern element," we think it
unlikely that Congress intended RICO to apply in the absence of a more
significant societal threat.

*Id.* In the instant matter, with only one alleged injury, Plaintiff's RICO allegations

are missing that "significant societal threat" by the Defendants. Further,

Defendants' alleged associated-in-fact enterprise is now defunct and Plaintiff does

not allege that the enterprise is currently attempting to harm Plaintiff's business.

There is simply no allegation by Plaintiff that can be inferred to allege that there

was "long-term criminal conduct" by the Defendants against Plaintiff or that the

Defendants pose a threat of continued criminal activity. *See id.*

Even assuming Plaintiff sufficiently alleged that it suffered damages

connected to monies owed for the Taney Street Properties repairs, that alleged

conduct still concerns only one single injury. That single injury being the

combination of the damages that concern the repairs to the Taney Street Properties.

Because these damages all arise from a single issue, they are construed as a single

injury. This type of single injury that occurred in only two short timeframes over a

three year period is not the type of required continuity that Congress intended. *See*

*id.* ("Predicate acts extending over a few weeks or months and threatening no

19

future criminal conduct do not satisfy [the continuity] requirement." (alteration in original) (quoting *H.J., Inc.*, 492 U.S. at 242)).

## C. RICO Conspiracy, § 1962(d)

"Under § 1962(d), it is unlawful to conspire to violate any of the substantive provisions of RICO." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 373 (3d Cir. 2010) (citing 18 U.S.C. § 1962(d)). A defendant, in some circumstances, "may be liable under § 1962(d) even where its own actions would not amount to a substantive RICO violation." *Id.* (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). However, for a RICO conspiracy claim to be properly alleged, the plaintiff's complaint must "adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" *Id.* (alteration in original) (quoting *Salinas*, 522 U.S. at 65). Here, because Plaintiff has failed to allege a RICO cause of action, Plaintiff's RICO conspiracy claim is accordingly dismissed.

## D. State Law Claims

Plaintiff's Complaint also pleads tortious interference with contractual relations and civil conspiracy, which are brought under Pennsylvania law. ECF No. 1 at ¶¶ 201-214. Because the Court dismissed Plaintiff's RICO claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise

20

supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Byrd v. Shannon*, 715 F.3d 117, 128 (3d Cir. 2013) (affirming district court's decision to decline supplemental jurisdiction over plaintiff's state law claims after dismissing plaintiff's federal law claim). Accordingly, Plaintiff's tortious interference with contractual relations and civil conspiracy claims are hereby dismissed.

## VI. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is granted in favor of all Defendants.[7] Plaintiff's causes of action concerning RICO (Counts I, II, and III) are dismissed. Because Plaintiff did not adequately plead a cause of action under the RICO statute, Plaintiff's RICO conspiracy cause of action (Count IV) is also dismissed. Finally, because Plaintiff's causes of action under federal law are dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's tortious interference with contract and civil conspiracy state law claims (Counts V and VI); therefore Plaintiff's state law claims are dismissed, as well. Accordingly,

---

[7] *See* page 1 n. 1, *supra*.

21

Plaintiff's Complaint is dismissed in its entirety. The Court will issue an accompanying order in conjunction with this Memorandum.

**BY THE COURT:**

5-13-20

**CHAD F. KENNEY, JUDGE**